220 S.C. 376 (1951)
68 S.E.2d 321
KINARD
v.
MOORE ET AL.
16561
Supreme Court of South Carolina.
November 13, 1951.
*377 Messrs. Butler & Moore, of Spartanburg, for Appellants, Margaret Caroline Moore et al., and Butler & Moore, of *378 Spartanburg, and Uzzell & DuMont, of Asheville, N.C., for Appellants, Corinne Moore Pruit et al.
*379 Mr. E.W. Johnson, of Spartanburg, for Appellants, Kennedy T. Moore et al.
Messrs. Daniel, Russell & Means, and Jesse W. Boyd, of Spartanburg, for Defendants-Respondents, John McDowell Moore et al.
*380 Messrs. Perrin, Ward & Perrin, of Spartanburg, for Plaintiff-Respondent, Mary Louise Moore Kinard.
Mr. Benjamin O. Johnson, of Spartanburg, for Defendant-Respondent, Mary Martha Moore.
Messrs. Butler & Moore, of Spartanburg, for Appellants, Margaret Caroline Moore et al., and Butler & Moore, of Spartanburg, and Uzzell & Dumont, of Asheville, N.C., for Appellants, Corinne Moore Pruitt et al., in reply.
The following is the order of Judge Greneker in the Court below:
*381 Walter J. Britton, Jr., was the only child of Walter J. Britton and Margaret Moore Britton. He was never married, and died resident in Spartanburg County on July 30, 1949, leaving a will naming his father executor and sole beneficiary. His father had died May 4, 1947, and his mother had died some years before then.
The plaintiff was appointed administratrix cum testamento annexo and brought this action to determine who are the heirs of Walter J. Britton, Jr., entitled to his estate, and in what proportions.
The case was referred to the Master for Spartanburg County, who has filed the testimony with his Report, and it is now before me on exceptions to the Report.
All possible claimants of an interest in the estate are parties and classified in the complaint as First, Second, or Third cousins of Walter J. Britton, Jr. Unknown claimants are brought in by publication under Section 880 of the Code of Procedure.
The facts are not in dispute. The testimony shows and the Master finds that Walter J. Britton, Jr., left surviving him no widow, no child or other lineal descendant, no father or mother, no brother, or sister of the whole or half blood, no child of such brother or sister, no lineal ancestor, and no uncle or aunt of the whole or half blood, and that his next of kin are the seventeen children of his six uncles and aunts, living at the time of his death.
His father left no relatives, and, consequently, the relationship to Walter J. Britton, Jr., of the parties to this action derives through his mother, Margaret Moore Britton. Her father was married twice, and by the first marriage, had four children, George Joseph Moore, Mary Moore McQueen, Martha Moore Hill, and James Rockwell Moore. By the second marriage, he had three, Margaret Moore Britton, William Montgomery Moore, and Charles Andrew Moore. All of these died before the death of Walter J. Britton, Jr., and all of them left children surviving Walter J. Britton, Jr., as follows:
*382 1. George Joseph Moore left John McDowell Moore, Mary Martha Moore, and Margaret Montgomery Moore.
2. Mary Moore McQueen left Mary McQueen McIver, Mrs. Albert S. Bledsoe, Alice McQueen, and J. Everitt McQueen.
3. Martha Moore Hill left William Moore Hill.
4. James Rockwell Moore left William Archiball Moore, Charles Burette Moore, Mattie Moore Kestler, and Cora Moore Allgood.
5. William Montgomery Moore left Margaret Caroline Moore, Mary Louise Moore, and William Lamar Moore.
6. Charles Andrew Moore left Corinne Moore Pruitt and Sarah Moore McMahon.
The Master correctly held that Walter J. Britton, Jr., had six uncles and aunts, four of the half blood and two of the whole blood, all of whom predeceased him, and that but for Act No. 194 of 1945, 44 Stat. 313, amending Subdivision 6 of Section 8906 of the Code of 1942, the estate would be distributable to the first cousins of Walter J. Britton, Jr., of both the whole and the half blood.
The Master further held, however, that the Act of 1945 requires the determination of whether "uncles and aunts" as used therein meant uncles and aunts of the whole blood only, and reached the conclusion that only children of uncles and aunts of the whole blood could take.
Parties who are related to Walter J. Britton, Jr., more remotely than children of predeceased uncles and aunts were held to be excluded from any interest.
The exceptions challenge these two conclusions.
Subdivision 6 of Section 8906 as amended by the Act of 1945 reads:
"`If the intestate shall leave no child or other lineal descendant, father, mother, brother or sister of the whole blood, nor child of such brother or sister of the whole blood, nor brother or sister of the half blood, or lineal ancestor, the *383 widow shall take the entire estate. If the intestate shall leave no widow the estate shall descend in equal parts to the uncles and aunts; the children of a deceased uncle or aunt to take among them the share to which their parent would have been entitled had said parent survived the intestate. If there be no uncle, aunt or child of a deceased uncle or aunt, then the estate shall descend to the next of kin.
"`In reckoning the degrees of kindred, the computation shall begin with the intestate and be continued up to the common ancestor, and then down to the person claiming kindred inclusively, each step inclusively being reckoned as a degree.'"
A reading of the Act shows clearly that the Master was correct in concluding that relatives more remote than children of deceased uncles or aunts are excluded. To let them in it would be necessary to add a clause to the amending Act to the substantial effect that "the child or children of a deceased child of an uncle or aunt shall likewise represent the parent and take among them the share the parent would have taken had said parent survived the intestate". The Statute limits takers to "the uncles and aunts; the children of a deceased uncle or aunt to take among them the share to which their parent would have been entitled had said parent survived the intestate". The court may not, by construction, extend the Statute to include children of deceased children or deceased uncles or aunts. The exceptions raising this question are overruled. See Poaug v. Gadsden, 2 Bay. 293, and North v. Valk, Dud. Eq. 212.
However, I cannot agree with the Master's conclusion that the Legislature in adopting the Act of 1945 amending Subdivision 6 of Section 8906 intended that the words "uncles and aunts" as used therein should mean "uncles and aunts of the whole blood". If that had been the intention, would not the appropriate words have been employed? The court is not warranted in limiting the language of the Act to a narrower meaning than the words used import. And it must be assumed that the Legislature *384 chose its language with care to express its intent and used the words in their ordinary and common acceptation.
The record shows, and the Master finds that Walter J. Britton, Jr., had six uncles and aunts, four of the half blood, and two of the whole blood, all of whom predeceased him, leaving children surviving him.
Under the Statute the primary question is: Who are the living children of the predeceased uncles and aunts of Walter J. Britton, Jr.?
From the first adoption of our Act of Descent and Distribution in 1791, 5 Stat. 162, the Legislature has always specified when the whole blood relatives are to be preferred to the half blood. Consequently, we know that the Legislature has always been alert to the distinction between the whole blood and the half blood and has left no doubt of its intention when the half blood is to be postponed.
In 1797, 5 Stat. 49, the Legislature amended the original statute of 1791 so that in cases where the intestate left no widow or lineal descendant, the parent would not exclude brothers and sisters. Judicial interpretation construed the amending Act as merely a proviso to the clause in the original Act which provided for descent to brothers and sisters of the whole blood where there was no surviving parent of the intestate, and that half blood brothers and sisters were postponed.
The number of instances in which the half blood is postponed to the whole blood in the different subdivisions of Section 8906 must dispel any doubt that the Legislature used the words "uncles and aunts" in the Act of 1945 without distinction between the whole and half blood for the reason that it intended no such distinction.
The decided cases strengthen and confirm this view. Edwards v. Barksdale, 2 Hill Eq. 416, decided in 1836, held that first cousins of the whole and half blood are next of kin in equal degree. This decision was made by Chancellor Harper on Circuit, and on appeal, the court said:
*385 "In ordinary cases it might be sufficient to say that the Court is unanimously of opinion the decree delivered in this case by Chancellor Harper is correct, and must be affirmed. But the very confident tone in which it was insisted by the counsel for the plaintiff, Thomas B. Bona, that the decree was erroneous in principle, and that the authorities on which it professed to rely, were wholly untenable, or inapplicable, require that something more should be said. The Court has re-examined the statutes which required construction, as well as the cases which have been decided under them; and upon full consideration, is entirely satisfied that the construction heretofore given to the statutes respecting the half blood is the correct construction, and that the cases decided, were rightly decided, and are in harmony with each other.
"The Court expresses itself in this decided manner, that it may be understood by the profession and the community that the construction and doctrine established by this decree is permanently settled, and the door to further litigation on the subject closed."
Our court has consistently rejected the frequently urged contention that half blood relatives are postponed to whole blood relatives by our Statute of Descent and Distribution, and has limited such postponement to the specific instances enumerated in the Statute.
In Felder v. Felder, 5 Rich. Eq. 509, decided in 1853, the intestate left two half brothers and a half sister, and nine nephews and nieces, the children of a deceased brother of the whole blood. The question presented was whether each half blood brother and sister should take one-fourth of the estate and the nine children of the deceased brother of the whole blood should take the other fourth among them. On Circuit, the Chancellor held that the half brothers and half sister, and the children of the deceased brother of the whole blood should each take an equal share. The case was appealed to the Court of Appeals in Equity and then referred to the Court of Errors at the request of two Chancellors who desired the aid of the Law Judges in settling a rule of property. *386 The Court of Errors carefully reviewed all the reported decisions citing them in a note to the opinion, and comments extensively on our Statute of Distribution, saying that no uniform principle pervades it.
After pointing out that under the English Law in force when the Act of 1791 was adopted those of the half blood were entirely excluded from the inheritance of real estate and were admitted according to propinquity equally with the whole blood to the succession of personalty, the court said: "Our Act making both descriptions of estate a common fund for distribution, compounds as to the half-blood between total exclusion as to one estate, and unrestricted admission as to the other, by prescribing that a brother or sister of the whole-blood shall exclude a brother or sister of the half-blood, and by not admitting the children of a deceased brother or sister of the half-blood to represent the parent, as in the case of nephews and nieces of the whole-blood; and, except in these instances, by placing or leaving the whole-blood and half-blood in the same category as to succession."
Further on, the court said: "Again, it is urged, that the literal interpretation we have adopted violates the general purpose of the Act to postpone the half blood to the whole blood. But there is no evidence of such purpose to postpone, except in the instances enumerated in the Act; and postponement, in specific cases, raises the presumption that general postponement was not intended."
After pointing out that the right to inherit is not a natural right, but a creature of civil law and that the laws of various states vary widely, both as to who shall take and their shares, the court said: "The Act of 1791 consists of a series of positive regulations on this subject, and our province as Judges is to expound them, and not to deflect or overrule them on conceits of symmetry and policy." The court adverted to the seeming anomaly "in excluding a half brother and admitting the children of a deceased brother of the whole blood, jure representationis, where there is a brother of the whole *387 blood, and admitting a half brother and not enlarging the interest of the children of a brother of the whole blood where there is no brother of the whole blood. But it is quite as just to say that the anomaly consists in excluding the half brother in the former instance".
In Perry v. Logan, 5 Rich. Eq. 202, decided in 1853, the intestate left an uncle of the half blood and an aunt of the half blood and a number of cousins. The uncle and aunt of the half blood were adjudged entitled to the whole estate. In discussing the provisions of the Statute of Descent and Distribution as they relate to the half blood, the court said: "The distinction between these two classes of heirs (whole blood and half blood) is dropped in reading the Statute as soon as we are through with those cases which are specifically provided for."
In 65 C.J. at page 1200, in defining the word "uncle", it is said "according to the common meaning of the word, it includes the half brother of the father", and in note 2 to the text, the following is quoted from State v. Reedy, 44 Kan. 190, 24 P. 66: "According to the common understanding, there is no distinction between the whole and half blood". The same is necessarily equally true of the word "aunt". See also 43 Words and Phrases, page 63.
We must assume that, in adopting the 1945 Act amending Subdivision 6 of Section 8906, the Lawmakers understood and used the words "uncles and aunts" in their common and ordinary acceptation, and that they knew the settled rule of property established in 1836 by the case of Edwards v. Barksdale, supra, that first cousins of the whole blood and of the half blood are admitted equally to the right of administration and to the succession of intestate estates. We must assume further that the words were used without distinguishing between the whole bolod and the half blood in the light of the positive declarations of our Court announced in 1853 and never since departed from that the Statute of Distribution postpones the half blood only in the specific instances enumerated in the Act; and that the *388 enumeration of these specific instances raises the presumption that no general postponement was intended; "The distinction between these two classes of heirs (whole blood and half blood) is dropped in reading the Statute as soon as we are through with those cases which are specifically provided for".
If the Lawmakers had intended to exclude uncles of the half blood and their children under the circumstances defined in the amending Act, they would have said so. The court has no right to add the words they omitted, nor to interpolate them "on conceits of symmetry and policy". There is no ambiguity, and nowhere in the amending Act or in the Statute it amends is there any evidence of a purpose to postpone relatives of the half blood, except in the specific instances enumerated. As the court said in Felder v. Felder, supra, "postponement in specific cases raises the presumption that general postponement was not intended". If the General Assembly had intended to disinherit first cousins of the half blood, it doubtless would have said so in no uncertain terms. Lawton v. Lower Main Street Bank, 170 S.C. 334, 170 S.E. 469. They may not be disinherited by unnecessary implication under the guise of statutory construction. The only effect of the amending Act of 1945 is to provide that they shall take by representation of their respective parents  that is, per stirpes instead of per capita.
The exceptions to the Master's conclusion that only first cousins of the whole blood can take, are sustained.
It Is, Therefore, Ordered, Adjudged and Decreed that the testamentary disposition of the Estate of Walter J. Britton, Jr., having lapsed because of the prior death of the sole beneficiary, his estate is distributable as in cases of intestacy, and that his heirs and distributees are the seventeen children of his six predeceased uncles and aunts living at his death, to whom the estate is distributable per stirpes.
November 13, 1951.
*389 PER CURIAM.
Walter J. Britton, Jr., late of Spartanburg County, died on July 30, 1949. He left a will of date September 5, 1942, by the terms of which he devised all of his property, after the payment of debts, to his father, Walter J. Britton, as sole beneficiary, whom he appointed as executor.
Walter J. Britton predeceased his son, Walter J. Britton, Jr., and the will of Walter J. Britton, Jr., made no provision for the distribution of his estate in the event his father did not survive to take under the will.
It is agreed among the parties that the legacy contained in the will of Walter J. Britton, Jr., lapsed, and that therefore he died intestate, and that his estate is distributable under the statute of descent and distribution.
The plaintiff, Mary Louise Moore Kinard, was appointed as administratrix cum testamento annexo, and brought this action to declare the testamentary disposition of the estate of Walter J. Britton, Jr., to be lapsed, and to determine who are entitled to his estate, and in what proportion they inherit.
The primary question involved in this case is the construction of Section 8906 of the 1942 Code, as amended by the Act of 1945, Act 194, approved May 14, 1945, 44 Stats. 313,  the intestacy statute  on the point of whether uncles and aunts (and their children by representation) mean uncles and aunts by the whole blood, or uncles and aunts of the half blood and the whole blood.
The cause was referred to the Master of Spartanburg County, who held that under the statute, "uncles and aunts" as used therein, should be construed to mean uncles and aunts of the whole blood only; and reached the conclusion that only children of uncles and aunts of the whole blood could take, excluding those of the half blood.
Upon appeal to the circuit court, the master was reversed in part. By its decree, the circuit court held that the estate *390 of Walter J. Britton, Jr., is distributable among the children, per stirpes, of the six predeceased uncles and aunts of both the whole and the half blood living at the death of Walter J. Britton, Jr. The appellants seek a reversal of this holding.
The master's finding that relatives more remote than children of deceased uncles and aunts,  that is, second and third cousins,  were excluded,  was affirmed by the circuit court decree.
We have given careful study to the record in this case, the applicable law, and the comprehensive briefs submitted by counsel. In our opinion, the able decree rendered by Judge T.B. Greneker soundly and correctly decides the issues presented.
The exceptions are overruled, and the circuit decree stands affirmed as the judgment of this court. Let it be reported.
BAKER, C.J., and FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.