17633

James W. BYNUM and Etta Bynum, Administrators of the estate of Grace M. Parker, Deceased, Respondents, v. Etta M. BYNUM, Elzie M. Brown, Hugh M. Morgan, J. Tyler Morgan, and Grace Morgan Simmons, Respondents, and Mary Marchant Maddock, Appellant.

(113 S. E. (2d) 748)

*Messrs. Nelson, Mullins & Grier, Frank L. Taylor* and *James C. Cordell,* of Columbia, *for Appellant,* 

*Messrs. Boyd, Bruton & Lumpkin* and *Seigler & Seigler,* of Columbia, *for Respondents,* 

March 31, 1960.

Moss, Justice.

Grace M. Parker, a resident of Richland County, South Carolina, died intestate on November 5, 1957, leaving an estate consisting of real and personal property. She left surviving her no husband, parent, child or lineal descendant, but left a sister of the whole blood, the appellant, Mary Marchant Maddock, and the respondents, Etta M. Bynum and Elzie M. Brown, both sisters of the half blood, and the children of a predeceased brother of the half blood, Hugh M. Morgan, J. Tyler Morgan and Grace Morgan Simmons.

James W. Bynum and Etta Bynum were appointed administrators of the estate of Grace M. Parker and brought this action to determine the validity of certain claims filed against the estate, and to determine who are the heirs at law of Grace M. Parker and entitled to her estate and in what proportions.

All possible claimants of an interest in the estate of Grace M. Parker are parties to this action. The appellant, Mary

Marchant Maddock, is a person *non compos mentis,* and appears in this action by her duly appointed guardian *ad litem,* and asserts by her answer that she is entitled to inherit from her deceased sister, Grace M. Parker, all of her estate because she is a sister of the whole blood, to the exclusion of her half sisters and the children of her predeceased half brother. The respondents, Etta M. Bynum and Elzie M. Brown have answered the complaint, and assert that they are entitled to share, even though they are sisters of the half blood, in the distribution of the estate of Grace M. Parker. The other respondents, Hugh M. Morgan, J. Tyler Morgan and Grace Morgan Simmons are in default, but the record shows that they accepted service of the summons and petition.

This case was referred to the Master of Richland County for the purpose of taking the testimony and reporting his findings of law and fact. A hearing was duly held and, thereafter, the Master filed his report, holding that under Section 19-52(3) of the 1952 Code of Laws of South Carolina, that Mary Marchant Maddock, the whole blood sister of the intestate, did not take the whole estate to the exclusion of the half blood sisters and the children of a predeceased brother of the half blood. He further held the estate is distributable one-fourth to the respondent Etta M. Bynum, one-fourth to the respondent Elzie M. Brown, one-fourth to the appellant Mary Marchant Maddock, and the remaining one-fourth to be divided in equal shares among the respondents Hugh M. Morgan, J. Tyler Morgan and Grace Morgan Simmons. The appellant, Mary Marchant Maddock, excepted to the report of the Master, asserting that he should have held that all of the estate of the intestate descended to her to the exclusion of her sisters of the half blood and the children of a predeceased brother of the half blood. The exceptions to the report of the Master were heard by the Honorable B. E. Nicholson, Special Judge, and he confirmed the findings and conclusions of the Master and adopted his report as the judgment of the Court The case is before this Court upon

timely notice of intention to appeal from the order of the Special Circuit Judge.

The question for determination is where an intestate dies leaving no spouse, child, lineal descendant or ancestors, but leaves a sister of the whole blood, two sisters of the half blood and the children of a predeceased brother of the half blood, does the surviving sister of the whole blood take the entire estate to the exclusion of the sisters of the half blood and the children of the predeceased brother of the half blood, under Section 19-52(3) of the 1952 Code of Laws of South Carolina.

Prior to 1791, estates in South Carolina had been distributed under the English Statute of Distribution, enacted in England in 1670, 22 & 23 Chas. 2, ch. 10, p. 523, which said Statute was made of force and effect in South Carolina in 1712, 2 Stats. 744. On February 19, 1791, 5 Stats. 162, our first Statute of Descent and Distribution was enacted by the General Assembly of this State. In the Act of 1791, Section 4 thereof, which is identical in every respect with Section 19-52(3) of the 1952 Code of Laws of South Carolina, provided:

"(3) If the intestate shall not leave a lineal descendant, father or mother, but shall leave a widow and brothers and sisters or a brother or sister of the whole blood the widow shall be entitled to one moiety of the estate and the brothers and sisters or brother or sister to the other moiety as tenants in common. The children of a deceased brother or sister shall take among them respectively the share which their respective ancestors would have been entitled to had they survived the intestate."

The Act of 1791 was amended by the General Assembly of this State on December 16, 1797, 5 Stats. 304, so that in cases where the intestate left no widow or lineal descendant, the parent would not exclude brothers and sisters. In the case of *Kinard v. Moore,* 220 S. C. 376, 68 S. E. (2d) 321, 323, this Court adopted the order of the Circuit Judge and approved the following holding:

"In 1797, 5 Stats. [304], the Legislature amended the original statute of 1791 so that in cases where the intestate left no widow or lineal descendant, the parent would not exclude brothers and sisters. Judicial interpretation construed the amending Act as merely a proviso to the clause in the original Act which provided for descent to brothers and sisters of the whole blood where there was no surviving parent of the intestate, and that half blood brothers and sisters were postponed."

In the case of *Wren v. Carnes,* 4 Desaus. Eq. 405, 4 S. C. Eq. 405, decided in 1813, it appears that Mary S. White died unmarried and intestate leaving her mother, Jane Wren, and a brother and sister of the half blood. The sister of the half blood died unmarried and intestate, leaving her mother and her half brother. The question arose as to whether, under the Act of 1791, as amended by the Act of 1797, the brother of the half blood inherited the estate of the intestate along with the mother. The Trial Court permitted the brother of the half blood to inherit. On appeal, the decree of the Circuit Court was reversed. The Court, after pointing out that the half blood brothers and sisters were postponed one degree to the whole brothers and sisters by the Act of 1791, then concluded that the Act of 1797, using the words "brothers and sisters", did not include brothers and sisters of the half blood, said:

"The counsel for the appellant has observed that in the fourth clause of the Act of 1791 the words brothers and sisters are used twice without any terms of restriction, and that they there mean the whole blood.

"This is so; but they so evidently and appropriately refer to the words immediately preceding in the same clause, 'brothers and sisters, or brother and sister of the whole blood,' that the insertion of the words 'of the whole blood' afterwards would have been superfluous. * * *

"In every clause of the Act of 1791, in which the children of a brother or sister are provided for, it is the children of a brother or sister of the whole blood. Whatever construction

shall be put upon the words brother and sister in the proviso, must be put upon the same words in the clause of the Act of 1797, to which the proviso is attached, there being no repugnance between them. If then, the expression brothers and sisters or brother and sister in the clause, comprehends the half as well as the whole blood, the issue of a brother of the half blood is put upon a footing with a brother of the whole blood, which would reverse the situation in which they are placed by the Act of 1791, for by that Act, the children of a brother of the whole blood, take with a brother of the half blood. Many absurd consequences would follow from this construction in favor of the half blood, and we cannot shut our eyes to them. If the meaning of a statute be doubtful, the consequences are to be considered in the construction, and if in this case we say that the legislature intended brothers and sisters of the half, as well as of the whole blood, we shall be bound to say so in every other case which may occur.

"It is said, that under our old act of distribution, brothers and sisters of the half blood were let in equally with brothers and sisters of the whole blood; but the manner of computing the degrees of kindred is prescribed by the act of 1791, and the issue of the brother of the whole, is expressly put on a footing with a brother of the half blood. The act of 1797 refers to the act of 1791, and relates to the same subject. Now all acts that relate to the same subject, must be taken to be one system and construed consistently.

"The general words brothers and sisters are certainly broad enough to include brothers and sisters of the half blood; but the act of 1797, is open to two constructions, one consistent, and the other inconsistent with the act of 1791. I am bound, I think, to adopt the former. This view of the subject appears to me to be warranted by sound principles of construction, and consistent, too, with the object of the act of 1797."

In the case of *Lawson v. Perdriaux,* 1 McCord 456, 12 S. C. L. 456, decided in 1821, it appears that Francis Lawson died intestate and the question for determination was whether

his mother would take the whole of his estate as his only heir, or whether his half brother should take half of the estate. The court reaffirmed what had been said in the case of *Wren v. Carnes, supra,* and said:

"By the act for the abolition of the rights of primogeniture, passed in 1791, brothers and sisters of the half blood are excluded from the estate of the intestate, who has left also a brother or sister of the whole blood. And brothers and sisters of the whole blood are in like manner excluded, when the intestate leaves a father or mother. By the same act, the issue of a brother or sister of the half blood can take only under the general provision for the 'next of kin' and not by representation. By the act of 1791 then, the mother of the intestate Francis Lawson, would have taken the whole estate, even if the intestate had left a brother or sister of the whole blood; and a brother or sister of the whole blood, had there been no parent surviving, would have taken the whole in exclusion of brothers and sisters of the half blood."

The Court then discusses the effect of the amendment of the Act of 1791 by the Act of 1797, and said:

"Now what is the evil complained of? Not surely that parents took in exclusion of brothers and sisters of the half blood, for these were postponed not only to parents, but to brothers and sisters of the whole blood, and were ranked only with the issue of such brothers or sisters. Two distinct classes of kindred, *i. e.* (1) parents (2) brothers and sisters of the whole blood, stood, not together, but in succession, to exclude brothers and sisters of the half blood, under the act of 1791. It would seem then that the evil complained of was that parents took in exclusion of brothers and sisters of the whole blood, and it follows that the amendment desired was that parents should no longer take in exclusion of them. In construing then the act of 1797, which is called an act to amend, &c., we are to limit the construction by the amendment desired, so as to render the remedy introduced adequate to the evil complained of; but no more than ad-

equate, unless the terms used plainly require a more comprehensive interpretation. * * *

The strict import of the words used conspires then with the apparent object which led to the act of 1797, to confine the meaning of brothers and sisters to those of the whole blood. * * * Now the act of 1791 not only gives the whole estate to the brothers and sisters of the whole blood in exclusion of those of the half blood, and to parents in exclusion of both, but confines the right of taking by representation among collateral kindred to the issue of brothers and sisters of the whole blood. But if in the act of 1797, 'brothers and sisters' comprehend both those of the whole and half blood, then not only would brothers of the whole and half blood and parents be placed upon the same footing, and constitute but one class instead of three, but by the proviso quoted, the issue of the brother of the half blood would be made to take by representation or *per stirpes,* equally with the issue of the brother of the whole blood. Such a change of the rules of the act of 1791, should be imperatively ordered before being adopted; else we might by construction introduce new principles into that act, which is to be regarded as the context of the act of 1797, and with which, the latter should be rendered consistent, wherever it does not expressly amend or alter the former. * * * The brother of the half blood is therefore by no construction to be placed upon a footing with those of the whole blood."

In the case of *Ex parte Mays,* 2 Rich. L. 61, 31 S. C. L. 61, it was said:

"In *Wren & wife v. Carnes,* 4 Des. 405, it was held, on the provisions both of the Act of '91 and the amendatory Act of 1797, 5 Stat. 304, that the words, brothers and sisters used in both Acts, meant brothers and sisters of the whole blood, and excluded brothers and sisters of the half blood. * * *"

In the case of *Hagermeyer v. City Council of Charleston,* 12 S. C. Eq. (Riley Eq.) 117, decided in 1837, it appears

that one Joseph Clarke died intestate in 1822, and no claim having been interposed on the part of the next of kin, it was supposed that the estate, which was entirely personal, had escheated, and an order of escheat was issued and the funds in the hands of the administrators of said estate were paid over to the City Council of Charleston. In 1834 an action was instituted and in said action it was found as a fact that at the time of the death of the intestate Clarke, his next of kin was Maria Agnes Retmeyer, a sister of the whole blood, and Margaret Theresa Frantz, also a sister of the whole blood; and Maria Theresa Brandis and John Christopher Brandis, children of Elizabeth Brandis, a predeceased sister of the whole blood; and Clara Hagermeyer and one Mrs. Liesenburg, sisters of the half blood of the intestate. Chancellor DeSaussure held that by the Act of Distributions, sisters of the half blood are not permitted to take, while there are sisters of the whole blood. He said:

"* * * If no brother or sister of the whole blood had survived the intestate, these sisters of the half blood would have been placed on a footing with the children of Mrs. Brandis, who was a sister of the whole blood; but by the Act of Distribution, they are not permitted to take, while there are sisters of the whole blood; and as the rights of the parties were fixed at the death of the intestate, the estate is distributable into three parts; one to the administrator of Mrs. Retmeyer, one to the administrator of Mrs. Frantz, and one is again divisible between the two children of Mrs. Brandis."

The report of the Master in this case states, with reference to the *Hagermeyer case, supra,* that: "The opinion, unfortunately, does not quote the text of the statute in effect. Apparently, it was somewhat different from the present statute, * *" Our research convinces us that at the time of the decision in the *Hagermeyer case,* the Act of 1791, as amended by the Act of 1797, was in force and effect, and that Section 19-52(3) of the Code, which the Master says is applicable, was identical with the statute which was in effect at the time the. *Hagermeyer case* was decided.

It also appears that on December 16, 1851, the General Assembly of this State, by an Amending Act, 12 Stats. 73, set forth how the Act of 1797 was to be interpreted. This Amending Act, after reciting the provisions of the 1797 Act, provided:

*"Be it enacted.* That brothers and sisters, in the said Act mentioned, shall be taken and understood, and they are hereby declared to be, brothers and sisters of the whole blood."

It is our opinion that the 1851 Act was merely declaratory of the decisions of the Court which had previously construed the 1797 amendment in conjunction with the original Act of 1791, to the effect that the Amending Act of 1797, when specifying brothers and sisters, meant brothers and sisters of the whole blood. *Wren v. Carnes, supra; Lawson v. Perdriaux, supra; and Ex parte Mays, supra.* See also in this connection the case of *Felder v. Felder,* 5 Rich. Eq. 509, 26 S. C. Eq. 509.

The case of *Kinard v. Moore,* 220 S. C. 376, 68 S. E. (2d) 321, is not applicable. The reason such case is not applicable is that there was a different factual situation and the construction of a different section of the Code was involved. 19-52(6).

We call attention to two interesting articles on Descent and Distribution in South Carolina, appearing in Vol. 8, page 48, and Vol. 9, page 3, of the Year Book of the Selden Society.

We conclude that under Section 19-52(3) of the 1952 Code of Laws of South Carolina, and the cases which have construed such Section, that the appellant, Mary Marchant Maddock, being a sister of the whole blood of the intestate, inherited the entire estate, to the exclusion of the two sisters of the half blood and the children of the predeceased brother of the half blood.

The order of the lower Court confirming the report of the Master is reversed, and this case remanded to the lower

Court for the purpose of entering an order directing the administrators of the estate of Grace M. Parker, deceased, to distribute the entire estate to the appellant, Mary Marchant Maddock.

Reversed and remanded.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.