659 S.E.2d 131

In re HOSPITAL PRICING LITIGATION.

Teresa Lynn KING, Respondent,

v.

ANMED HEALTH, Appellant.

David Blair and all others similarly situated, Respondents,

v.

Medical University Hospital Authority, Appellant.

Kathy and Franklin Kinard and all others
similarly situated, Respondents,

v.

Medical University Hospital Authority, Appellant.

David Blair and all others similarly situated, Respondents,

v.

CareAlliance Health Services, Inc., d/b/a Roper Hospital,
Inc., and Bon Secours St. Francis Xavier Hospital,
Inc., Appellant.

Deborah Wilson and all others similarly situated, Respondents,

v.

CareAlliance Health Services, Inc., d/b/a Roper Hospital,
Inc., and Bon Secours St. Francis Xavier Hospital,
Inc., Appellant.

Greenville Hospital System, Appellant,

v.

Kellie Jean Paulson and Michael A. Paulson, Respondents.

William S. Robertson, as Personal Representative for the
Estate of Mildred Driggers Robertson, Deceased, and
all others similarly situated, Respondents,

v.

Greenville Hospital System, Appellant.

Joshua L. Boyd, Respondent,

v.

Self Regional Healthcare, Appellant.

Alexis Sams and all others similarly situated, Respondents,

v.

Palmetto Health Alliance d/b/a Palmetto Richland

& Palmetto Baptist, Appellants.

Frances Bonetto, Respondent,

v.

Palmetto Health Alliance d/b/a Palmetto Richland
& Palmetto Baptist, Appellants.

Kathy Green and all those similarly situated, Respondents,

v.

Sisters of Charity Providence Hospitals, Appellant.

No. 26457.

Supreme Court of South Carolina.

Heard Jan. 10, 2008.
Decided March 10, 2008.
Rehearing Denied April 16, 2008.

Manton M. Grier and R. David Proffitt, both of Haynsworth Sinkler Boyd, of Columbia, and Ellis M. Johnson, II, H. Sam Mabry, III and Courtney C. Atkinson, all of Haynsworth Sinkler Boyd, of Greenville, for Appellant Palmetto Health Alliance d/b/a/ Palmetto Richland & Palmetto Baptist.

Marguerite S. Willis, Nikole Setzler Mergo, and Daniel C. Leonardi, all of Nexsen Pruet, of Columbia, for Appellant Sisters of Charity Providence Hospitals.

Thomas S. White and Lydia Blessing Applegate, both of Haynsworth Sinkler Boyd, of Charleston, for Appellant Care-Alliance Health Services Corporation d/b/a Roper St. Francis Healthcare, Roper Hospital, Bon Secours St. Francis Hospital.

Robert L. Widener, Celeste T. Jones, Jane W. Trinkley, and Kelly M. Jolley, all of McNair Law Firm, of Columbia, for Appellant Medical University Hospital Authority.

Wm. Douglas Gray, of McNair Law Firm, of Anderson, for Appellant AnMed Health.

H. Sam Mabry, III and Charles M. Sprinkle III, both of Haynsworth Sinkler Boyd, of Greenville, for Appellant The Greenville Hospital System.

Stephen D. Baggett and Steven M. Pruitt, both of McDonald Patrick Baggett Poston & Hemphill, of Greenwood, for Appellant Self Regional Healthcare.

A. Camden Lewis, Ariail E. King, and Peter D. Protopapas, all of Lewis & Babcock, of Columbia, Richard A. Harpootlian, of Columbia, Gedney M. Howe III, of Charleston, and Robert D. Dodson, of Columbia, and Michael E. Spears, of Spartanburg, for Respondents.

Acting Chief Justice MOORE.

In this case, Appellants appeal the circuit court's order granting partial summary judgment in favor of Respondents regarding the meaning of a statute that requires hospitals to

offer certain discounts to an insurer who provides a specific type of health insurance contract. The circuit court held that Appellants violated the statute. We disagree and reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Respondents[1] (hereinafter "Patients") filed an action against Appellants (hereinafter "Hospitals") for failing to comply with S.C.Code Ann. § 38–71–120 (2002) (repealed by Act No. 332, § 31, 2006 S.C. Acts 2624, 2661) (hereinafter "the Discount Statute"), which provides:

> Whenever an insurer contracts with a hospital to provide full hospital service and medical care service contracts for its policy owners in the same manner as described in Chapters 13 and 14 of Title 37 of the 1962 Code and arranges with the hospital for payment of claims under procedures described in Chapters 13 and 14 of Title 37 of the 1962 Code, the insurer is entitled to the same discounts allowed to any insurer. Any person making full payment for hospital services within seven days from receipt of a bill for such services shall be entitled to the same discount allowed to any insurer.

Hospitals currently bill their patients the same amount for identical procedures based on a Charge Master,[2] but Hospitals give different discounts on these procedures depending on Hospitals' contracts with a patient's insurance company. Patients filed the instant action against Hospitals, arguing that these current billing practices violated the Discount Statute. In response, Hospitals contended that the Discount Statute was an outdated statute that had no application because insurance companies do not currently offer "full hospital service and medical care service contracts" to which the Discount Statute applies and that no insurer contracts with Hospitals "in the same manner as described in Chapters 13 and 14 of

---

1. The class of Respondents consists of insured and uninsured Patients, whose claims we address separately. Additionally, references to "patients" or "hospitals" do not refer to either the Respondents or Appellants in this action. Instead, such references apply just to hospitals or patients in general.

2. A Charge Master is a list of each medical procedure or service and its cost that a hospital provides.

Title 37 of the 1962 Code." The parties filed cross motions for summary judgment, and after a hearing, the circuit court granted partial summary judgment in favor of Patients.

The circuit court first noted that the manner in which insurance companies provide health insurance to their policy-holders has changed since the Discount Statute was first enacted. However, the circuit court rejected Hospitals' argument that full service contracts no longer exist. Rather, the circuit court held that all of the contracts involved in this litigation were service contracts, as opposed to indemnity contracts, and thus, under a progressive reading of the statute, the Discount Statute applied to the current contracts utilized by Hospitals. Additionally, the circuit court held that the requirement that an insurer must contract "in the same manner as described in Chapters 13 and 14 of Title 37 of the South Carolina Code" simply meant that the insurer must contract directly with Hospitals and determined that insurers currently contract with Hospitals in this same manner. Accordingly, the circuit court ruled that the Discount Statute required the Hospitals to offer uniform discounts to all insured Patients. Additionally, the circuit court held that the second sentence of the Discount Statute required Hospitals to provide uninsured Patients with a bill reflecting the lowest discount offered to any insurer. Because Hospitals admitted that they failed to do so, the circuit court ruled that Hospitals violated the Discount Statute.[3]

Hospitals appealed and we certified this case pursuant to 204(b), SCACR. Hospitals present the following issue for review:

Is the circuit court's interpretation of the Discount Statute erroneous as a matter of law because it is against the legislative intent and ignores the plain meaning of the terms? [4]

---

3. Following the circuit court's order, the legislature repealed the Discount Statute.

4. Although Hospitals present several other issues for review, we find it unnecessary to address those issues based on our holding on this central issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding that the Court need

54

The issue of interpretation of a statute is a question of law for the court. *Catawba Indian Tribe of South Carolina v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007). In a case raising a novel question of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court. *New York Times Co. v. Spartanburg County Sch. Dist. No. 7*, 374 S.C. 307, 309, 649 S.E.2d 28, 29 (2007).

## LAW/ANALYSIS

### I. Insured Patients

Hospitals argue that the circuit court erred in holding that the Discount Statute mandates that Hospitals provide uniform discounts to all insured Patients. Hospitals maintain that the legislature intended for the Discount Statute to apply to "full hospital service and medical care service contracts," which no longer exist, and that no insurer contracts "in the same manner as described in Chapters 13 and 14 of Title 37, Code of Laws of South Carolina 1962." We agree.

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Charleston County Sch. Dist. v. State Budget and Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute. *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). The history of the period in which the statute was passed may be considered in interpreting the statute. *Catawba Indian Tribe of South Carolina v. State*, 372 S.C. 519 n. 6, 642 S.E.2d 751 n. 6 (2007).

In 1946, Blue Cross and Blue Shield ("BCBS") received a charter from the State pursuant Act No. 417, 1946 S.C. Acts 1304, later codified as Chapters 13 and 14, Title 37, of the 1962

---

not rule on remaining issues when the disposition of a prior issue is dispositive).

Code. This charter enabled BCBS to be organized as a non-profit corporation and this statutory framework authorized BCBS to only sell "service contracts"[5] for hospital and medical care services. Under these contracts, the hospital agreed to provide hospital services to all BCBS subscribers. By statute, BCBS was required to pay the hospital directly, and individual policyholders owed no financial responsibility to the hospital. Medical care service contracts were similar agreements with physicians which enabled physicians to provide medical care services to all BCBS subscribers. In contrast, mutual insurance companies, which were regulated by the Department of Insurance, could only sell "indemnity contracts" and were prohibited from selling service benefit contracts.

In 1967, the General Assembly appointed a committee ("S–3 Committee") to examine South Carolina's health insurance laws. The S–3 Committee determined that BCBS could not profitably operate within the confines of Chapters 13 and 14 due to the advancement in healthcare, and that BCBS had already been acting outside the scope of its statutory charter by selling indemnity contracts. The S–3 Committee also determined that BCBS was able to negotiate with the hospitals and doctors for discounts while the mutual insurance companies could not so negotiate. Because BCBS received discounts which were unavailable to the mutual insurance companies and because BCBS was a tax-exempt entity, the S–3 Committee found that BCBS attained an unfair advantage over mutual insurance companies. Accordingly, the S–3 Committee recommended, among other things, that the legislature enact legislation eliminating the distinction between Chapters 13 and 14 nonprofit insurance companies and mutual insurance companies by allowing both to sell service contracts and indemnity contracts. Additionally, the S–3 Committee recommended that hospitals be required to offer all insurance companies uniform discounts.

In response to the S–3 Committee's study, the Chief Insurance Commissioner submitted proposed legislation regarding uniform discounts. The Commissioner's proposed legislation

---

5. These types of contracts are referred to as "service contracts," "full service contracts," and "service benefit contracts."

would have simply made it unlawful for any health care facility that contracted with any insurer "to discriminate by offering or granting discounts to such service or insurance organization" and would have required any discount to be uniform to all patients.

In 1968, as a result of the S–3 Committee's recommendations, the legislature passed the predecessor to the current Discount Statute which provided:

> Whenever any insurance company, including corporations organized under Chapter 13 and 14 of Title 37, Code of Laws of South Carolina 1962, contracts with a hospital to provide full hospital service and medical care service contracts for its policy owners in the same or a comparable manner as such coverage is provided by corporations organized under Chapters 13 and 14 of Title 37 and such insurers arrange with the hospital for payment of claims under procedures used by corporations under Chapters 13 and 14 of Title 37, such insurers shall be entitled to the same discount allowed to any insurer and any person making full payment for hospital services within seven days from receipt of a bill for such services shall be entitled to the same discount allowed to any insurer.

Act No. 1096, § 1, 1968 S.C. Acts 2582.

Additionally, and in accordance with the S–3 Committee's recommendation, the legislature repealed Chapters 13 and 14. This repeal transformed BCBS from a nonprofit corporation into a mutual insurance company. The legislature also amended the code to allow both nonprofit organizations and mutual insurance companies to issue service contracts and indemnity contracts. In 1987, the legislature amended the Discount Statute to its current version.

Hospitals argue that, considering the statute's text and the history in which it was passed, the Discount Statute is an outdated statute that has no application to today's health insurance contracts. Specifically, Hospitals contend that the legislature intended for the Discount Statute to strictly apply to service contracts as recognized in 1967, which are no longer used, and to insurers that contract "in the same manner as described in Chapters 13 and 14 of Title 37 of the 1962 Code." Patients, on the other hand, argue that the circuit court

correctly interpreted the Discount Statute to apply to current health insurance contracts and that such interpretation is consistent with the legislative intent.

We hold that the circuit court erroneously construed the Discount Statute to apply to the current health insurance contracts for several reasons. Foremost, and contrary to the circuit court's broad interpretation, service contracts are a specific and narrow group of prepaid health insurance contracts that stand in sharp contrast to health insurance contracts currently employed or utilized by Patients' insurers. By statute, service contracts required an insurer to pay the hospital directly and the insurer was further prohibited from charging the subscriber a co-payment or deductible or holding a policyholder financially responsible for any covered service. *See* S.C.Code of Laws § 37–1063 (1962) (providing that "[a]ll contracts ... shall be a direct obligation of the corporation to pay the hospital in cash for authorized services rendered a subscriber; but the subscriber shall be personally liable for any hospital service not paid by the corporation to the hospital"); and S.C.Code of Laws § 37–1054 (1962) (providing that the purpose of Chapter 13 nonprofit corporations shall be to furnish hospital services "in consideration of the payment by such subscribers of a *definite sum* for the hospital care so contracted to be furnished") (emphasis added).

The circuit court's categorization of current health insurance contracts as "service contracts" simply because a subscriber receives services from the hospital constitutes manifest error when the statute's terms are given their plain meaning.[6] This generalization ignores the plain meaning of the term "service

---

6. Additionally, we note that the circuit court's narrow definition of an indemnity contract as *exclusively* one in which the subscriber pays the hospital and the insurer then provides a cash reimbursement to the subscriber is not consistent with South Carolina law. *See* S.C.Code Ann. § 38–1–20(19) (2006) (defining insurance as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies"). *See also Joseph v. Sears Roebuck Co.,* 224 S.C. 105, 113–14, 77 S.E.2d 583, 587 (1953) (noting that an insurance contract is likewise a contract of indemnity where "[t]he insurer undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event"); *Town of Winnsboro v. Wiedeman–Singleton, Inc.,* 303 S.C. 52, 56, 398 S.E.2d 500, 502 (Ct.App.1990) (recognizing that a "familiar example of *contractual* indemnity is the third party liability insurance policy" (emphasis supplied)).

contract" and impermissibly expands the scope of the Discount Statute. *Brown v. S.C. Dept. of Health and Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (holding that where the terms of the statute are clear, the court must apply those terms according to their literal meaning, and an appellate court may not resort to a forced interpretation in an attempt to expand or limit the scope of a statute). Thus, because the Discount Statute applies to service contracts and no insurer offers such contracts today, Patients failed to show that the Discount Statute applies.

Along the same lines, we also find that the circuit court erred in holding that the language "in the same manner as described in Chapters 13 and 14 of Title 37 of the South Carolina Code" simply meant that the insurer must contract directly with Hospitals. The language of the Discount Statute clearly requires that in order to qualify for the discount, the insurer must adhere to particular statutory requirements as set forth in Chapters 13 and 14, a statutory scheme to which Patients' insurers do not follow. Accordingly, because no insurer contracts with Hospitals in this same manner, the Discount Statute is not applicable to Patients. *See The Honorable Francis X. Archibald,* 1984 WL 249791 (1984) (noting that "in order to get the discount the insurer would have to ... make payments the same way that nonprofit hospital and medical service corporations do" and that "[a]*n insurer which does business any other way is ineligible* ") (emphasis added).

Patients argue that the Court should broadly interpret the Discount Statute to apply to current health insurance contracts because current contracts share similarities with service contracts. While Patients may be factually correct in that similarities exist, we believe that the text of the Discount Statute and its legislative history require a strict interpretation. First, the legislature rejected the Insurance Commissioner's proposed legislation which would have mandated broad, uniform discounts to all contracts for health insurance. Second, the legislature amended the Discount Statute in 1987 by deleting the "or comparable" language, and thus requiring insurers to contract and arrange for payment "in the same manner" as described in Chapters 13 and 14. We believe that this change indicates that the legislature intended to focus on the precise requirements of Chapters 13 and 14. This further

illustrates that an insurer is only entitled to the same discount under the specific conditions set forth in Chapters 13 and 14, which are no longer used. *See Denene, Inc. v. City of Charleston,* 352 S.C. 208, 212, 574 S.E.2d 196, 198 (2002) (holding that the Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something). Finally, the fact that the legislature repealed the Discount Statute immediately after the circuit court issued its order, in our view, also indicates that the legislature did not intend for the Discount Statute to apply to current health insurance contracts.

For the foregoing reasons, we hold that the circuit court erred in broadly interpreting the Discount Statute to apply to current health insurance contracts.

## II. Uninsured Patients

■ The second sentence of the Discount Statute provides: "Any person making full payment for hospital services within seven days from receipt of a bill for such services shall be entitled to the same discount allowed to any insurer." S.C.Code Ann. § 38–71–120. Hospitals argue that the Discount Statute does not apply to uninsured Patients' claims because the second sentence of the statute must be read in conjunction with the first sentence, which is outdated and no longer applicable. We agree.

■ "The well-settled rule in South Carolina is that, where possible, all provisions of a statute must be given full force and effect." *Nucor Steel v. S.C. Pub. Serv. Comm'n,* 310 S.C. 539, 545, 426 S.E.2d 319, 323 (1992). However, the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole. *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996).

We hold that the two sentences in the Discount Statute may not be read independently, but must be read in conjunction with one another in order to ascertain the legislative intent. Doing so leads to the interpretation that an uninsured Patient is entitled to the same discount afforded an insurer who

qualifies for the discount under the first sentence of the Discount Statute. In other words, an uninsured Patient is entitled to the same discount that an insurer who contracts with a hospital to provide "full hospital service and medical care service ... in the same manner" as described in Chapters 13 and 14. However, because service contracts are no longer in existence and insurers do not contract in the same manner as Chapters 13 and 14 corporations, we hold that there is no "same discount" available to uninsured Patients. The second sentence of the statute is not meaningless, but rather, the statute as a whole is simply not relevant because the contracts described therein are not used in the current health care industry.

Accordingly, we hold that the circuit court erred in holding that the Discount Statute applied to uninsured Patients.

## Conclusion

For the foregoing reasons, we hold the circuit court erred in interpreting the Discount Statute, and therefore, we reverse the circuit court's grant of partial summary judgment to Patients.

WALLER, BEATTY, JJ., and Acting Justices JAMES W. JOHNSON, JR. and EDWARD B. COTTINGHAM, concur.