725 S.E.2d 708

**CONSUMER ADVOCATE FOR the STATE
of South Carolina, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF INSURANCE
and National Council on Compensation Insurance,
Inc., Respondents.**

No. 4944.

Court of Appeals of South Carolina.

Heard Jan. 10, 2012.
Decided Feb. 22, 2012.
Rehearing Denied May 31, 2012.

Elliott F. Elam, Jr., and Hana P. Williamson, both of Columbia, for Appellant.

Mitchell Willoughby, Benjamin Parker Mustian, and Tracey Green, all of Columbia, for Respondent National Council on Compensation Insurance, Inc., and John O'Neal, of North Augusta, and Gwendolyn Fuller McGriff, of Columbia, for Respondent South Carolina Department of Insurance.

KONDUROS, J.

The Consumer Advocate for the State of South Carolina appeals the Administrative Law Court's (ALC's) ruling that the South Carolina Department of Insurance (DOI) was not required to publish notice of a proposed change in loss costs rates for workers' compensation insurance because the overall change was a decrease. We reverse.

## FACTS

Workers' compensation rates are composed of two components: loss costs and loss-costs multipliers. Loss costs are the medical expenses and lost wages component of the rate. The loss-costs multiplier represents the insurer's expenses and profit. Each insurer files its own loss-costs multiplier for approval with the DOI. A ratings organization for workers' compensation insurers, National Council on Compensation Insurance, Inc. (NCCI), files loss costs on behalf of all insurers with the DOI for approval. The filing by the NCCI contains an overall increase or decrease. In November 2008, the NCCI presented a loss costs filing with a –0.3% change in the overall loss costs figure—an overall decrease. However, that overall figure contains approximately 700 job classifications—roofers, attorneys, and teachers, for example—and the increases and decreases among the various classifications averaged out to an overall decrease. The DOI did not publish notice of this filing, and the Consumer Advocate sued contending that section 38–73–910(A) of the South Carolina Code (Supp.2010) mandated the filing.

The ALC determined the plain language of the statute indicated publication of the loss costs filing was only required when there was an overall increase to the loss costs and the fact that the DOI may have previously interpreted the statute differently was not persuasive because its interpretation had been an error of law. This appeal followed.

## STANDARD OF REVIEW

"Statutory interpretation is a question of law." *Hopper v. Terry Hunt Constr.*, 373 S.C. 475, 479, 646 S.E.2d 162, 165 (Ct.App.2007). This court is free to decide matters of law with no particular deference to the lower court. *Pressley v. REA Constr. Co.*, 374 S.C. 283, 287, 648 S.E.2d 301, 303 (Ct.App.2007).

## LAW/ANALYSIS

The Consumer Advocate contends the ALC erred in finding section 38–73–910(A) did not require publication of notice of the loss costs filing because the filing contained an overall decrease. We agree.

"All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Kiriakides v. United Artists Commc'ns, Inc.*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). "The court has no right to add the words [the legislature] omitted, nor to interpolate them on conceits of symmetry and policy." *Kinard v. Moore*, 220 S.C. 376, 388, 68 S.E.2d 321, 325 (1951) (internal quotation marks omitted).

Language in a statute must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). "Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law." *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct.App.1993). "Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would defeat the plain legislative intention." *State v. Sweat*, 386 S.C. 339, 351, 688 S.E.2d 569, 575 (2010).

Section 38–73–910(A) provides:

(A) An increase in the premium rates may not be granted for workers' compensation insurance, nor for any other line or type of insurance with respect to which the director or

his designee has, by order, made a finding that (a) legal or other compulsion upon the part of the insured to purchase the insurance interferes with competition, or (b) under prevailing circumstances there does not exist substantial competition, unless notice is given in all newspapers of general, statewide circulation at least thirty days in advance of the insurer's proposed effective date of the increase in premium rates. The notice must state the amount of increase, the type and line of coverage, and the proposed effective date and *must allow any insured or affected party* to request within fifteen days a public hearing upon the propriety of the rate increase request before the Administrative Law Judge Division. A copy of the notice must be sent to the Consumer Advocate.

(emphasis added).

Section 38–73–910(A) states notice is to be given when there is "an increase" in rates. In this case, the NCCI's filing contains increases in many classifications. Had the legislature intended to make publication a requirement only for overall increases, it could have amended section 38–73–910 to specify it is only concerned with "overall" increases as it did in other paragraphs of section 38–73–910.

Furthermore, the overarching purpose of the statute is to give any "insured or affected party" the opportunity to protest rate increases *before* they become effective. We acknowledge that 38–73–910(A) does not specifically recognize some of the restructuring of the workers' compensation ratemaking process. The notice of NCCI's filing only serves to put insureds on inquiry notice that their rate may ultimately be affected by a loss costs increase. Nevertheless, to interpret section 38–73–910(A) as applying only to overall increases is contrary to the statute's purpose. Under the DOI's interpretation, an insured might get notice of the filing one year and might not get notice the following year even though that insured's loss costs increased in both years. Such an arbitrary result cannot have been intended.

Based on the language and intent of the statute, we conclude the ALC's determination was in error. Because we conclude section 38–73–910(A) mandates publication of the notice of the NCCI's loss costs filing, we need not address the

Consumer Advocate's remaining argument regarding whether the failure to publish the notice constitutes a due process violation. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

Therefore the order of the ALC is

**REVERSED.**

FEW, C.J., and THOMAS, J., concur.